# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No.: 8:15-CR-00303-T-17-AEP

JONATHON ISRAEL MERO-MERO,

    Defendant.
_____/

## DEFENDANT MERO MERO'S SENTENCING MEMORANDUM AND MOTION FOR VARIANCE

Defendant Jonathan Mero Mero, by and through his undersigned counsel, respectfully submits that a sentence below the advisory Guidelines range computed in the Presentence Report (PSR) would be sufficient but not greater than necessary to serve the ends of sentencing set forth at 18 U.S.C. § 3553(a). In support of this recommendation, Mr. Mero Mero submits the following memorandum.

### I. Background

Jonathan Mero Mero was born in Manta, Ecuador in December 1990. He was raised in humble but adequate conditions and completed high school in Ecuador. (PSR, ¶ 57). Mr. Mero Mero completed one year of voluntary military service with the hopes of gaining entrance into the Ecuadorean Naval Academy. (*Id*., ¶ 64). He was not accepted into the Naval Academy due to his back problems but was able to find work as a security guard and fisherman to earn a living. (*Id*., ¶63). Mr. Mero Mero was living with his common law wife and two minor children prior to his arrest in this case. He was financially responsible for his wife along with an infant born to Mr. Mero Mero and his wife in May 2015 as well as a young girl fathered by another man but whom Mr. Mero Mero was caring for as if she were his own daughter. (*Id*., ¶ 43-44).

Mr. Mero Mero's strong desire to provide financially for his growing family was a significant factor in his poor decision to join a cocaine trafficking venture in approximately August 2015. (*Id*., ¶ 9). Joining this venture led to the charges filed in this case. Mr. Mero Mero pled guilty to Count One of the Indictment and fully accepts responsibility for his role in the offense. Additionally, he submitted a letter to the Court which has been translated into English and attached to the PSR. (*Id*., p. 26). In the letter, Mr. Mero Mero detailed the difficult economic conditions in Ecuador pointing out that he was attempting to support a family of four on the equivalent of $370 USD per month. (*Id*.).

## II. Objections to the Presentence Report (PSR)

Mr. Mero Mero's only unresolved objection to the advisory Guidelines range computed in the PSR is that Probation should have applied a two level reduction to the offense level to reflect the defendant's minor role in the offense pursuant to USSG § 3B1.2(b). This objection impacts paragraphs 23, 25, 29, and 72. Mr. Mero Mero also objects to paragraph 88 to the extent that it suggests there are no factors found at 18 U.S.C. §3553(a)(1)-(7) for the Court to consider in fashioning a sentence below the advisory guideline system. Mr. Mero Mero details arguments in support of a below Guidelines sentence in a subsequent section of this memorandum. With regard to the applicability of the role in the offense reduction, the November 2015 amendments to the Sentencing Guidelines provide added support for the reduction in this case.

**a. The Sentencing Commission amended § 3B1.2 because courts were not applying the reduction as often as the Commission intended.**

Mr. Mero Mero objects to paragraph 23 insofar as it does not recommend a two level downward adjustment to reflect his mitigating role in the offense pursuant to USSG §3B1.2(b). The two level reduction is appropriate here because Mr. Mero Mero was a minor participant in the criminal conspiracy covered by Count One of the Indictment. Notably, the U.S. Sentencing

Commission amended the Application Notes to §3B1.2, effective November 1, 2015, finding that the "mitigating role is applied inconsistently and more sparingly than the Commission intended." The added language to §3B1.2 makes it clear that the adjustment can and should apply in a case like this where a defendant is substantially less culpable than the average participant even if he performed "an essential or indispensable role" in the crime. §3B1.2, App. Note 3(C).

Furthermore, Application Note 3(A) was modified to ensure that sentencing courts can still apply the adjustment to "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored." In light of the recent amendment, the mere fact that similarly-situated defendants in past maritime drug smuggling cases might not have received the downward adjustment should not prevent its application in this case.

   **b. Mr. Mero Mero's conduct fits squarely within the confines of §3B1.2(b), as amended.**

The amended Application Note 3(C) includes a "non-exhaustive" list of factors for the court to consider:

> i)   *the degree to which the defendant understood the scope and structure of the criminal activity;*
>
> (ii)  *the degree to which the defendant participated in planning or organizing the criminal activity;*
>
> (iii) *the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;*
>
> (iv)  *the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;*
>
> (v)   *the degree to which the defendant stood to benefit from the criminal activity.*

3

*For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.*

§3B1.2, App. Note 3(C). In this case, Mr. Mero Mero did not plan or organize the conspiracy and did not exercise any significant decision-making authority or discretion. His role was confined to that of a crew member, not the captain, and he did not have a "proprietary interest in the criminal activity" but rather was "simply being paid to perform certain tasks."

Therefore, his role in the offense is precisely the type of role the Commission had in mind when it amended §3B1.2 to encourage courts to apply the adjustment more frequently. Mr. Mero Mero is not attempting to convince the Court that his role in the offense was trivial or inconsequential. Rather, he submits that in the parlance of §3B1.2(b) he was less culpable than the average participant and therefore eligible for the two level reduction in offense level. His role in the offense was necessary in that every vessel needs a crew, however, he exercised no control or discretion over the planning or execution of the conspiracy and did not stand to profit from the conspiracy beyond being paid for his limited services.

    **c. The Eleventh Circuit's *en banc* opinion in *De Varon* does not foreclose application of §3B1.2(b) in this case.**

*De Varon* stands for the proposition that the district court needs to weigh the case-specific facts to determine whether a given defendant should receive a mitigating role adjustment. The *en banc* Eleventh Circuit was careful to reject any bright-line rule for applying the role adjustment in drug courier cases: "[w]e do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal." *United States v. Rodriguez De Varon*, 175 F.3d 930, 944-45 (11th Cir. 1999) (*en banc*). Along similar lines, the Court of Appeals in *De Varon* did not lay down an edict that cases involving a substantial amount of drugs transported are precluded from the application of a mitigating role reduction. *Id*. (finding that drug

amount is a "relevant factor" and "may be dispositive" in some cases). All *De Varon* instructs this Court to do is to conduct a "uniquely fact-intensive inquiry" in light of two guiding principles: 1) to consider the defendant's role in the relevant conduct he has been held accountable for under the Guidelines; and 2) to consider his role as compared to that of other participants in the relevant conduct. *Id*. at 944-45.

Unlike the defendant in *De Varon* who was convicted of the crime of importing heroin, Mr. Mero Mero was convicted of the crime of conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine. Thus, where De Varon committed the "simple crime consisting of nothing more than the act of bringing drugs into this country," Mero Mero committed the continuing offense of conspiracy which by law involves at least one other culpable participant. *Id*. at 947-48 (Carnes, J. concurring). Mr. Mero Mero is not asking the Court to compare his conduct to some "larger criminal conspiracy," as suggested in the Addendum to the PSR, but to compare his conduct to the average participant in the conspiracy of which he was convicted. (PSR at p. 17). Simply put, the defendant was a minor participant in the scheme charged in Count One.

When compared to the average participant in the conspiracy charged in this case, Mr. Mero Mero's role was clearly inferior. In conducting the "average participant" analysis, the Court can include both charged and uncharged conspirators. *De Varon*, 175 F.3d at 944-45. As for Count One, the Indictment clearly contemplates that the conspiracy included more participants than simply Messrs. Mero Mero, Ebanks, and Palma Meza for it alleges that the three defendants "…did knowingly and willfully combine, conspire, and agree with each and <u>with other persons unknown to the Grand Jury</u>, to possess with intent to distribute and to distribute five (5) kilograms or more of [cocaine] …" (Doc. 1) (emphasis added). These unnamed "other persons" were involved in

planning and controlling the entire conspiracy and provided instructions and orders to the crew members charged in this case. The fact that these conspirators where not physically present on the vessel when it was apprehended by law enforcement does not in any way diminish the importance of their role in the conspiracy in comparison to Mr. Mero Mero's limited role as a mariner.

Reading the principles announced in *De Varon* in conjunction with the amended Application Notes to §3B1.2, the Court can properly conclude that Mr. Mero Mero qualifies for the two level reduction for minor role. That finding of fact can only be reversed on appeal if it is found to be clearly erroneous. *De Varon*, 175 F.3d at 937-38. Prior to the recent amendment, district courts may have been reluctant to apply the reduction to cases where the amount of drugs at issue made a particular defendant's role "important or essential." *Id*. at 942-43. That hesitation is no longer necessary: "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative…if he or she is substantially less culpable than the average participant in the criminal activity*.*" §3B1.2, App. Note 3(C).

### d. Applying §3B1.2(b) would result in a total offense level of 27.

The impact of granting the defendant's objection would be to reduce his total offense level from 33 to 27. Applying the two level downward adjustment in §3B1.2(b) would actually reduce the adjusted offense level by a total of six levels due to the operation of §2D1.1(a)(5)(iii) which adds an additional four-level reduction to the reduction in §3B1.2. With an offense level of 27 and criminal history category I, the advisory Guidelines range should be 70-87 months of imprisonment, with a minimum mandatory sentence of 120 months.

### III. Motion for Variance under Title 18, United States Code, Section 3553(a)

As the Court is aware, the Guidelines are no longer mandatory and may not be presumed reasonable. *United States v. Nelson*, 555 U.S. 350 (2009). Indeed, there are ". . . many instances where the Guideline range will not yield a reasonable sentence. . ." *United States v. Hunt*, 459

6

F.3d 1180, 1184 (11th Cir. 2006). This case is such an instance where the Guideline range computed in the PSR would yield an unreasonable sentence. Consideration of the factors addressed in Section 3553(a) supports a sentence well below the advisory guideline range recommended in the PSR. Mr. Mero Mero contends that each sentencing factor weighs in favor of a sentence below the advisory Guideline range, but for the purposes of this memorandum focuses on the following.

The offense of conviction in this case is a serious offense carrying serious consequences for those who violate the law. That said, a review of the nature and characteristics of the defendant and the circumstances that led him to commit the offense reveals a man who does not need to be imprisoned for ten or more years. As Mr. Mero Mero eloquently stated in his letter to the Court, he joined the conspiracy "on impulse, as a way out from my financial problems" but is "paying dearly for" that decision. (PSR, p. 26). In addition to facing a significant term of imprisonment, his wife wants nothing to do with him and he worries sincerely about his young children. (*Id*.) Given this heartfelt acceptance and recognition of personal responsibility, commitment to family, and educational attainment, Mr. Mero Mero is unlikely to re-offend upon returning home to Ecuador. His commitment to personal improvement is evidenced by his strong desire for vocational training as well as English as a Second Language (ESL) training while serving his sentence in this case. (*Id*., ¶¶ 59, 65-66).

Mr. Mero Mero has no prior criminal record and he played a minor role in the drug smuggling conspiracy charged in Count One. He certainly did not plan or organize the venture nor did he stand to share in a portion of the fruits of a successful operation. There was no violence used or even contemplated during the course of the crime. Mr. Mero Mero simply served as a

crew member on a vessel retrieving someone else's drugs which had been abandoned by another crew.

The Court is fully able to promote respect for the law, protect the public, and afford adequate deterrence by imposing a sentence less than 135 months in this case. Even if the Court accepts the defendant's arguments that a below guideline sentence is appropriate in this case, Mr. Mero Mero still faces several years of imprisonment. The premise that even minor actors in the maritime drug smuggling industry will receive several years of imprisonment in a foreign country if captured serves these ends of sentencing when viewed in relation to the other factors. Moreover, recent scholarship indicates that the length of a given defendant's sentence has little specific or general deterrent effect. *E.g.*, Nagin, Daniel S., "Deterrence in the Twenty-First Century," in Crime and Justice in America: 1975-2025, ed. M. Tonry, Chicago, Ill.: University of Chicago Press, 2013: 199-264.[1] Rather, factors such as the likelihood of getting caught result in a greater deterrent effect than the relative sentence length. (*Id*. at 253) (suggesting that "lengthy prison sentences cannot be justified on deterrent grounds, . . .").

Weighing the advisory Guidelines and the sentencing factors set forth in Section 3553(a), the defendant submits that a downward variance from the Guideline range should be granted. Indeed, in recent years district courts have imposed non-Guideline range sentences in the majority of powder cocaine trafficking cases. For fiscal year 2013, only 44.7% of powder cocaine trafficking defendants received a within range sentence.[2] The average sentence for powder cocaine

---

[1] The National Institute of Justice (NIJ) – "the research, development and evaluation agency of the U.S. Department of Justice" – agrees with Nagin's conclusions on deterrence finding that certainty of being caught is a vastly more effective deterrent than imprisonment and that prison sentences are ineffective at deterring crime (and may be counterproductive), found at http://nij.gov/five-things/pages/deterrence.aspx

[2] Found at: http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Powder_Cocaine.pdf

trafficking defendants was 79 months for fiscal year 2013, which is nearly fifty five months below the low end of the Guidelines computed in the PSR for Mr. Mero Mero. Although many below Guideline sentences are based on government motions for downward departures based on substantial assistance, the fiscal year 2013 data reveal that 18.5% of below range sentences for powder cocaine traffickers were not sponsored by the government.

## IV.     Conclusion

Mr. Mero Mero is a first-time offender who played a minor albeit necessary role in the offense of conviction. For all the reasons stated in this memorandum, the defendant urges the Court to grant his PSR objections and request for a variance and sentence him below the advisory Guideline range recommended in the PSR.

Respectfully submitted,

**s/Matthew J. Mueller**
Matthew J. Mueller, FBN: 047366
WIAND GUERRA KING, P.A.
5505 West Gray Street
Tampa, Florida 33609
Tel: 813-347-5100
Fax: 813-347-5198
Email: mmueller@wiandlaw.com
*Attorney for Defendant*
*Jonathan Mero Mero*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on June 11, 2016, I electronically filed the foregoing with the Clerk of the Court and the parties of record by using the CM/ECF system.

**s/Matthew Mueller**
*Attorney for Defendant*
*Jonathan Mero Mero*